[Cite as *State v. Howard*, 2018-Ohio-3692.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170453 |
| | | TRIAL NO. 16CRB-15254 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| CHARLES HOWARD, SR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 14, 2018

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Ashley Melson*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Arenstein & Gallagher*, *William Gallagher* and *Elizabeth Conkin*, for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1}   Defendant-appellant Charles Howard was charged with recklessly violating a civil protection order by attempting to contact Tasha Halbert via Facebook messenger. Following a bench trial, the trial court found Howard guilty and sentenced him to 180 days' confinement and Men's Extended Treatment, and remitted all costs.

{¶2}   Raising two assignments of error, Howard argues that the trial court abused its discretion in admitting Facebook screenshots that were not properly authenticated, and that his conviction was not supported by sufficient evidence. We find no merit to Howard's arguments and affirm the judgment of the trial court.

## Factual History

{¶3}   Charles Howard and Tasha Halbert had been in a long-term relationship and had three children together. After the relationship ended, Halbert obtained a domestic violence temporary civil protection order prohibiting Howard from contacting her. On June 1, 2016, Howard attempted to make contact with Halbert multiple times via Facebook messenger.

{¶4}   Howard pleaded not guilty and proceeded to a bench trial. Howard waived his right to counsel and represented himself.

{¶5}   The state called Lisa Pangallo from the Hamilton County Sheriff's Department, who testified that she had personally served the temporary protection order on Charles Howard when he came to the courthouse to pick it up. The order of protection was journalized on September 24, 2015, and was in effect until September 24, 2016.

{¶6}   Tasha Halbert was the state's next witness. The state presented her with five exhibits of screen shots of her Facebook messenger account. Halbert

2

explained that messenger allows users to call and send messages to their contacts. She further testified that she had logged into her Facebook account, taken the screen shots of her account, and printed them. The screen shots accurately depicted her Facebook messages. The screen shots show three written messages, 11 shared photos, five missed video chats, and 12 missed calls from one of her contacts, Chakahn Glory Howard.

{¶7} Two of the messages contained a birthday wish for Howard's son. One of the photos contained a message about missing Halbert. One of the photos was "The Thoughts of a Good Man," and referenced respecting, protecting, and loving a woman. Halbert received a notification that her Facebook nickname was changed to "lovem for life" after a missed call on June 14, 2016. After another missed call the following day, she received a notification that her nickname was changed to "Tasha Halbert," and a sexually graphic photograph was sent.

{¶8} Halbert testified that the Facebook messenger contact name Charles Howard had been recently changed to Chakahn Glory Howard, and that the photo associated with the name remained a photo of Charles Howard. Every time he called, his photograph would appear on her cell phone. Each message was also accompanied by a photograph of Howard. She further testified that Chakahn Glory was a singer that Howard liked. During their relationship, they did not communicate via Facebook, but she testified that she was certain it was Howard that had initiated the calls and messages due to their content and his past history of contacting her and harassing her.

{¶9} Howard did not cross-examine Halbert, and the state moved the screenshots into evidence. The exhibits were admitted over Howard's objection.

{¶10} Howard called Devyn Rutherford to testify on his behalf. She testified

that Howard had been living with her since October 17, 2015. She confirmed that Howard had a Facebook account that he accessed through their laptop computer and his cell phone. She testified that she had never seen Howard communicate with Halbert over Facebook, but admitted that she works from 9:30 a.m. to 6:00 p.m., Monday through Friday, and did not know what Facebook communications he engaged in while she was at work. She further testified that she had no knowledge of his communications when he used his cell phone to access Facebook.

{¶11} Rutherford stated that she had gone with Howard to the courthouse to take receipt of the protection order. Although she waited in the car, she confirmed that Howard had the protection order when he returned to the car.

{¶12} Howard rested, and the trial court found him guilty.

### Authentication of the Facebook Screenshots

{¶13} In his first assignment of error, Howard argues that the trial court abused its discretion in admitting the screenshots because they were not properly authenticated as having been sent by Howard.

{¶14} Authentication is governed by Evid.R. 901(A), which states, in relevant part, that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the material in question is what its proponent claims." Any witness with knowledge that a matter is what its proponent claims may testify to relevant facts to establish a foundation for authentication. *See State v. Gibson*, 6th Dist. Lucas No. L-13-1222, 2015-Ohio-1679, ¶ 49.

{¶15} "This burden is not great, and only requires a prima facie showing through direct or circumstantial evidence." *State v. Crossty*, 2017-Ohio-8382, 99 N.E.3d 1048, ¶ 29 (1st Dist.). All that is required is sufficient evidence from which

4

the trier of fact might conclude that a document is authentic. *See Gibson* at ¶ 45, quoting *Hartford Ins. Co. v. Parker*, 6th Dist. Lucas No. L-82-181, 1982 WL 6662, *7 (Dec. 3, 1982), quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 Fed.Supp. 1190, 1219 (E.D.Penn.1980). The proponent "must merely offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury." *State v. Callender*, 10th Dist Franklin No. 14AP-15, 2015-Ohio-4255, ¶ 32, quoting *State v. Caldwell*, 9th Dist. Summit No. 14720, 1991 WL 259529 (Dec. 4, 1991).

{¶16} "Once the prima facie threshold is met, 'the burden of going forward with respect to authentication shifts to the opponent to rebut the prima facie showing by presenting evidence to the trier of fact which would raise questions as to the genuineness of the document.' " *Gibson* at ¶ 47, quoting *Hartford Ins. Co.* at *7, quoting *Zenith* at 1219.

{¶17} In this case, Halbert testified that the screenshots were accurate depictions of her Facebook messenger that she had taken and printed. Howard did not introduce any evidence to rebut Halbert's testimony.

{¶18} Consequently, the state presented sufficient evidence to establish a reasonable likelihood that the screenshots were authentic. Because the trial court did not abuse its discretion in admitting the screenshots, we overrule the first assignment of error.

### Sufficiency of the Evidence

{¶19} In his second assignment of error, Howard contends that the state introduced insufficient evidence to prove Howard was the person who contacted Halbert through Facebook. When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

offenses proved beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶20} The elements of violating a protection order are set forth in R.C. 2919.27(A)(1), which prohibits a person from recklessly violating the terms of a protection order issued under R.C. 3113.31. The state admitted the order as an exhibit at trial. The protection order was issued under R.C. 3113.31, and prohibited Howard from initiating or having any contact with Halbert, including text messaging, social networking media, and electronic communications.

{¶21} Halbert and Howard had been in a long-term relationship and had three children together. Halbert testified that Howard had contacted her via Facebook messenger multiple times in June 2016. Based on the content of the messages and his history of harassing her, she knew the messages came from him. She further testified that his account name had been recently changed from Charles Howard to Chakhan Glory Howard, but Howard's photograph was still associated with the account. She knew that Howard liked a singer named Chakhan Glory. When he attempted to call her via Facebook, his photograph appeared on her cell phone.

{¶22} Rutherford confirmed that Howard had a Facebook account that he accessed through a computer and his cell phone. Although she had not seen Howard contact Halbert, she admitted that she did not know what communications he engaged in while she was at work or when he accessed Facebook from his cell phone.

{¶23} The trial court found that Halbert's testimony was credible, and that Howard did not offer any evidence to refute Halbert's testimony that he initiated contact with her through his Facebook account using the moniker Chakhan Glory and his photograph. The evidence presented, when construed in the light most

favorable to the state, was sufficient to convict Howard of violating a protection order. The second assignment of error is overruled.

## Conclusion

{¶24} Having considered and overruled Howard's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**CUNNINGHAM, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry this date.